IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARTHUR MOSES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 21-670 |
| | ) |
| UNITED PARCEL SERVICE, INC., | ) Magistrate Judge Dodge |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Arthur Moses ("Moses") brings this action alleging that Defendant United Parcel Service, Inc. ("UPS") discriminated against him on the basis of his race and sexual orientation, retaliated against him and subjected him to a hostile work environment, culminating in his termination from employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (Title VII), and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-63 (PHRA).

Currently pending before the Court are cross-motions for summary judgment filed by Moses and UPS (ECF Nos. 58, 61). For the reasons that follow, Moses' motion will be denied and UPS's motion will be granted.

**I.   Procedural History**

Moses commenced this case pro se on May 19, 2021. He subsequently obtained counsel, who filed an Amended Complaint on July 15, 2021 (ECF No. 2). The Amended Complaint alleges that Moses was subjected to harassment on the basis of his race and because he is gay, in violation of both Title VII (Count I) and the PHRA (Count II). Moses alleges that he was forced to perform work by himself that required two people, was blamed for machinery problems for which he was not responsible and was ultimately terminated from his employment on the false

basis that he had not responded to 72-hour notices.

Subsequently, his counsel withdrew and Moses has been proceeding pro se since March 11, 2022.

On March 2, 2022, UPS filed a motion for summary judgment (ECF No. 25), based solely on the failure of Moses to respond to requests for admission within the extension of time to which the parties agreed. On March 29, 2022, a Memorandum Order was filed (ECF No. 34), which denied this motion without prejudice on the ground that the underlying events occurred while Moses' counsel was seeking to withdraw from the action.

The Court directed UPS to re-serve Moses with the requests for admission by April 4, 2022 and directed Moses to respond within 30 days of service. (ECF No. 34 at 7.) When Moses failed to do so and engaged in other failures to comply with discovery, UPS filed a motion for sanctions (ECF No. 39). In an order dated June 17, 2022, the Court held that the requests were deemed admitted (ECF No. 48 at 8, 10), although it denied UPS's request to dismiss the case.

In August 2022, Moses filed several documents titled "Motion for Summary Judgment." Pursuant to a Court order filed on August 18, 2022 (ECF No. 67), the second motion filed (ECF No. 58) is the operative motion; the others (ECF Nos. 56, 65) were dismissed. UPS filed a response to Moses' motion on September 16, 2022 (ECF No. 73).

Pursuant to the schedule set by the Court, UPS filed a Renewed Motion for Summary Judgment along with a brief, a concise statement of material facts and an appendix (ECF Nos. 61, 62, 63, and 64). Although Moses was directed to file a response to this motion, he failed to do so.[1] Thus, all of the material facts cited by UPS are deemed admitted because of Moses'

---

[1] On September 19, 2022, Moses filed a nearly incomprehensible "Memorandum" in which he mischaracterizes the history of filings in this case and stated that UPS "has continued to show a lack of respect for the Plaintiff & the courts. There was nothing worth hearing from the Plaintiff

failure to deny or otherwise respond to them. See LCvR 56(E).

## II. Relevant Factual Background

Moses, who identifies as an African-American, gay male, commenced employment with UPS on March 31, 2014 at its facility located in New Stanton, Pennsylvania. During his employment with UPS, Moses primarily worked as a package handler in the Sort Department. (Defendant's Statement of Undisputed Material Facts ("DSUMF") ¶¶ 1-3 (ECF No. 63).)

Moses went on approved sick leave from June 3, 2019 through June 7, 2019. He took approved vacation leave from June 10, 2019 through June 14, 2019. He was scheduled to return to work on June 17, 2019, but did not report to work that day or any day thereafter. (*Id.* ¶¶ 4-6.)

On June 18, 2019, UPS sent Moses a 72-Hour Notice of Recall, which he received, advising him that if he did not contact Second Level Supervisor Ian Hopkins ("Hopkins") within an hour of his normal start time on June 21, 2019, he would be discharged from his employment. Moses did not contact Hopkins and he did not return to work by June 21, 2019. (*Id.* ¶¶ 7-8.)

UPS sent a second 72-Hour Notice of Recall to Moses on June 25, 2019, which he also received, advising him that if he did not contact Third Level Supervisor Kevin Welsh ("Welsh") within an hour of his normal start time on June 28, 2019, he would be discharged from his employment. Moses did not contact Welsh and he did not return to work by June 28, 2019. Because Moses did not contact Welsh, and because Welsh was unaware of Moses contacting any other UPS employee, Welsh terminated his employment on July 1, 2019. (*Id.* ¶¶ 9-11.)[2]

Welsh states that his decision to terminate Moses' employment was based solely on

---

or the courts, the defense stated. The defense only could be in opposition of their requests, orders & judgment. Since there is nothing worth hearing, there is nothing to oppose. The Plaintiff's request & complaints are valid, sufficient & granted." (ECF No. 74.)

[2] As discussed later in this opinion, Moses claims that he spoke to someone else at UPS.

Moses' failure to respond to the June 25, 2019 72-Hour Notice of Recall. Welsh's decision was not based on Moses' race, sexual orientation, or purported complaints of harassment. Moses admitted that, prior to his termination, he only saw Welsh "in passing two or three times" previously but "never ever actually spoke to him." At the time of Welsh's decision to terminate Moses, he was not aware of Moses' sexual orientation or any purported harassment complaints Moses may have made. (*Id.* ¶¶ 12-15.) As of July 1, 2019, Welsh had only been at UPS's New Stanton facility for a month or two and was responsible for all employees at the facility. Moses admits that he does not have any evidence Welsh was aware of his race, his sexual orientation, or any alleged prior harassment complaints he may have made. (*Id.* ¶¶ 16-17.)

Between January 1, 2019 and January 1, 2020, most employees at the New Stanton facility who received a 72-Hour Notice of Recall, and were terminated as a result of failing to respond to it, were white. (*Id.* ¶¶ 18.)

Moses alleged in his complaint that Hopkins, as well as supervisors "Tyler," "Rob," and others who are not identified, harassed him by calling him several offensive terms, including "nigger" and "faggot," asking him to perform tasks alone that required two people and blaming him for machinery problems for which he was not responsible. However, Moses has subsequently admitted that Hopkins never referred to him as "inferior," or used the word "nigger" or "faggot." He further admits that Hopkins, Tyler Roth and Robert Moore never harassed him. (*Id.* ¶¶ 19-23.)

Moses made no complaints of harassment, discrimination, or retaliation while employed by UPS. Moses cannot recall making any claims of discrimination based on race or sexual orientation, or retaliation claims, when he grieved his termination through the union on or about July 3, 2019. (*Id.* ¶¶ 28-29.)

4

### III.     Standard of Review

#### A.  Summary Judgment Standard

The Federal Rules of Civil Procedure provide that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court of Appeals has held that "where the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." *National State Bank v. Federal Reserve Bank,* 979 F.2d 1579, 1582 (3d Cir. 1992).

In following this directive, a court must take the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 266 (3d Cir. 2005); *Doe v. County of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001).

B. <u>Requests for Admission</u>

The Federal Rules of Civil Procedure provide that parties may serve requests for admission upon the opposing party and that failure to respond to the requests within 30 days (or such time as the parties stipulate to or as ordered by the court) will result in the requests being deemed admitted. Fed. R. Civ. P. 36(a)(3). "Matters deemed admitted due to a party's failure to respond to requests for admission are 'conclusively established' under Federal Rule of Civil Procedure 36(b), and may support a summary judgment motion." *Secretary United States Dep't of Labor v. Kwasny*, 853 F.3d 87, 91 (3d Cir. 2017) (footnotes omitted). *See* Fed. R. Civ. P. 56(c)(1)(A) (moving party may cite to, inter alia, "admissions," in support of a motion for summary judgment). "An admission is thus an 'unassailable statement of fact' and is binding on the non-responsive party unless withdrawn or amended." *Kwasny*, 853 F.3d at 91 (footnote omitted).

A party may seek an admission of matters relating to "the application of law to fact." Fed. R. Civ. P. 36(a). "'Requests for admission ... are not objectionable even if they require opinions or conclusions of law, as long as the legal conclusions relate to the facts of the case.'" *First Options of Chicago, Inc. v. Wallenstein*, 1996 WL 729816, at *3 (E.D. Pa. Dec. 17, 1996) (quoting *Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.*, 1995 WL 625744, at *6 (D. Kan. Oct. 5, 1995)).

However, requests for admission seeking "abstract conclusions of law" without reference to the parties are improper. *Petrunich v. Sun Bldg. Sys.*, Inc., 2006 WL 2788208, at *4 (M.D. Pa. Sept. 26, 2006 (request that a party "was discriminated [against] because of his age" lacked factual basis to derive a legal conclusion and was too abstract to be an application of the law to

the facts of the case). *Id.* at *5.

In this case, UPS requested that Moses admit that UPS did not discriminate or retaliate against him, without facts supporting this conclusion. (ECF No. 63 Ex. D, Req. Admis. Nos. 7, 8.) Because of the improper nature of this request, Moses' failure to respond does not constitute an admission as to these legal conclusions.

On the other hand, the other requests for admission served by UPS relate to issues of fact and are deemed admitted because Moses did not respond to them, despite being given multiple opportunities to do so. As noted above, he also failed to respond to the facts in UPS's Concise Statement and they are also deemed admitted on this basis also.

As discussed below, based upon his factual admissions, Moses cannot maintain his claims.

**IV.   Discussion**

   A.  Moses' Motion for Summary Judgment

Moses' motion for summary judgment and brief in support (ECF No. 59) do not comply with the Federal Rules of Civil Procedure, the Local Rules of this Court, or the August 2, 2022 Order of the undersigned, which outlined the proper procedures for him to follow (ECF No. 57). He does not provide a concise statement of material facts with numbered paragraphs, citations to the record or exhibits in support and he does not provide a "supporting memorandum" that "address[es] applicable law and explain[s] why there are no genuine issues of material fact to be tried and why the moving party is entitled to judgment as a matter of law."

Rather, the documents merely assert, without support, that: he was "terminated over the phone, on 7/1/2019, giving inference to discrimination"; "time card fraud" was "committed by UPS management et supervisors"; "UPS is in violation of providing suitable work for employees

under section 401(d)(1)(2) of state law"; there were "acts of malice et negligence by management, supervision et company employees"; and "there were defamatory statements submitted by management to a third party doctor's office." (ECF No. 58 at 2-3.) His brief does not cite any case law.

These allegations are not supported by affidavits, verifications, deposition testimony or any other evidence. Moreover, many of these conclusory and unsupported statements do not even relate to the claims that Moses has made in this case, which concern racial and sex discrimination and retaliation. Neither his motion nor his brief offer any facts to support when, if or how he was subject to discrimination or how Title VII or the PHRA may have been violated. Without any evidence of record or other support, his motion for summary judgment necessarily must be denied.

B.  UPS's Motion for Summary Judgment

UPS contends that it is entitled to summary judgment in its favor based on the admissions made by Moses. It alternatively argues that even without considering these admissions, Moses' claims fail on the merits.

1.  Discrimination based on Racial and Sex Disparate Treatment

Pursuant to the provisions of Title VII, it is an unlawful employment practice for an employer to discharge or discriminate against any individual, inter alia, because of that individual's race or sex. 42 U.S.C. § 2000e-2(a)(1). The Supreme Court recently clarified that the phrase "because of sex" includes discrimination against individuals who identify as gay and transgender. *See Bostock v. Clayton County, Ga.*, 140 S. Ct. 731 (2020). Such discrimination is also prohibited under the PHRA, 43 P.S. § 955(a).

In the absence of direct evidence of discrimination, a plaintiff may establish a prima facie

case of discrimination indirectly following the shifting burden analysis set forth by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). The same analysis applies for purposes of the PHRA. *See Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001) (racial discrimination); *Atkinson v. LaFayette College*, 460 F.3d 447, 454 & n.6 (3d Cir.. 2006) (sex discrimination).

> As the Court of Appeals has explained, a plaintiff:
>
> bears the initial burden of establishing a prima facie case by a preponderance of the evidence. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). When a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If the defendant meets this burden, the presumption of discriminatory action raised by the prima facie case is rebutted. *Tex. Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff then must establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action. *Id.* at 253, 101 S.Ct. 1089; *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817.

*Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797-98 (3d Cir. 2003) (footnotes omitted). "A plaintiff must initially establish a minimal prima facie case—essentially, that he or she is a member of a protected class and was qualified for an employment position, but that he or she was either not hired for that position or was fired from it 'under circumstances that give rise to an inference of unlawful discrimination.'" *Waldron v. SL Indus., Inc.*, 56 F.3d 491, 494 (3d Cir. 1995) (citation omitted).

UPS argues that Moses cannot establish a prima facie case of racial or sex discrimination, but that even if he could do so, UPS has proffered a legitimate, non-discriminatory reason for its action and that Moses has not identified any evidence of pretext.

UPS notes that Moses points to no circumstances that give rise to an inference of unlawful discrimination. Rather, the undisputed evidence establishes that Welsh, who was unaware of

Moses' sexual orientation and may have been unaware of Moses' race, made the decision to terminate Moses' employment because he failed to respond to a 72-Hour Notice of Recall. Thus, Moses cannot state a prima facie case of racial or sex discrimination.

Even assuming that Moses could state a prima facie case, the burden of production would then shift to UPS to articulate a legitimate, non-discriminatory reason for its action. UPS has proffered as its legitimate, non-discriminatory reason for Moses' termination his failure to respond to a 72-Hour Warning Notice. UPS has thus satisfied its relatively light burden of production. *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500-01 (3d Cir. 1997).

At that point, the burden would then shift back to Moses to proffer evidence from which the trier of fact could conclude that this reason is a pretext for unlawful retaliation discrimination. As the Court of Appeals has explained:

> To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence," and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons."

*Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (citations omitted). The evidence submitted by a plaintiff seeking to avoid summary judgment on this issue "must allow a factfinder to reasonably infer that each of the employer's proffered non discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Id.* at 764 (citations omitted).

Moses does not point to any evidence of pretext. In fact, he has not responded to UPS's

10

motion at all. Moreover, at his deposition,[3] Moses acknowledged that he did not contact Hopkins or Welsh as instructed, but claimed that he called the "call-off line" and spoke to someone on both occasions. (Moses Dep. 193:9-19, 198:10-23) (ECF No. 64 Ex. B.) This evidence, even if accepted as true, would not even demonstrate that UPS was wrong or mistaken that Moses failed to respond to the notices as directed, much less that the reason for his termination is unworthy of credence. In addition, Welsh has testified that, at the time he terminated Moses' employment, he was unaware of Moses contacting anyone else at UPS, and this fact is conclusively established. *Kwasny*, 853 F.3d at 91.

Thus, because there are no genuine issues of material fact that support Moses' claims of racial and sex discrimination, they must be dismissed.

2. Retaliation Discrimination

Title VII states that it is an unlawful employment practice to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The PHRA also contains an anti-retaliation provision, 43 P.S. § 955(d). The *McDonnell Douglas* burden-shifting framework also applies to retaliation claims. *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007). *See also Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005) (PHRA claim of retaliation).

As summarized by the Court of Appeals, the prima facie case elements for a retaliation claim are as follows: 1) the plaintiff engaged in activity protected by the anti-discrimination

---

[3] In reviewing a motion for summary judgment, a court "may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

statute; 2) the employer took action that a reasonable employee would have found to be materially adverse in that it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination; and 3) there is a causal connection between the plaintiff's opposition to or participation in proceedings against unlawful discrimination and the employer's action. *Moore v. City of Philadelphia,* 461 F.3d 331, 341-42 (3d Cir. 2006). The Supreme Court has held that retaliation must be proved by but-for causation. *University of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338 (2013). However, for purposes of a prima facie case, a plaintiff need only proffer sufficient evidence to raise the inference that her protected activity was the likely reason for the adverse employment action, not the but-for reason. *See Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249 (3d Cir. 2017).

A plaintiff cannot make a causal connection when it is undisputed that the decision maker was unaware of the plaintiff's previous protected activity, however. *See Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 415 (3d Cir. 1999). *See also Bailey v. Commerce Nat'l Ins. Servs.*, Inc., 267 F. App'x 167, 170 (3d Cir. 2008) ("the District Court correctly entered summary judgment in favor of Commerce because it was Corcoran's decision to fire Bailey and she was unaware of the protected action.") Because the undisputed record establishes that Welsh was unaware of any complaints Moses may have made, Welsh cannot have acted in retaliation for him making them. Thus, there is no evidentiary basis on which to demonstrate a causal connection. Therefore, Moses cannot establish a prima facie case of retaliation discrimination.

Even if Moses could have done so, however, UPS has proffered a legitimate, non-discriminatory reason for Moses' termination and he has not pointed to any evidence of pretext, as outlined above.

Therefore, Moses' claims of retaliation discrimination must be dismissed.

3. Hostile Work Environment

The Supreme Court has held that an employee may establish a violation of Title VII if he or she can show that discrimination based on a protected characteristic created a hostile or abusive working environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998). The Court of Appeals has held that:

> To win, a plaintiff must show that "1) the employee suffered intentional discrimination because of his/her [race], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability [meaning the employer is responsible]."

*Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (reciting these elements in a sexually hostile work environment case). *See also Faragher*, 524 U.S. at 786-87 & n.1; *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1082 (3d Cir. 1996).

UPS contends that Moses cannot maintain a hostile work environment claim because he admits that no one used derogatory slurs.[4] As explained above, these facts are admitted. Therefore, Moses cannot maintain a claim of hostile work environment, whether based on sex or race, and UPS's motion for summary judgment will be granted.

---

[4] In the alternative, UPS cites Moses' deposition for the argument that any slurs that were used were "isolated." However, as explained above, the admitted facts that Hopkins did not use slurs and that Hopkins, Roth and Moore never harassed Moses are "conclusively established" and thus, even if Moses were to point to contrary evidence in the record, he could not contest these established facts. *See Mina v. Hotel on the Cay Timesharing Ass'n, Inc.*, 410 F. App'x 450, 452 (3d Cir. 2010) ("even had the Minas provided specific facts beyond the statements in their pleadings, under Rule 36, the Minas' failure to respond to the Association's requests for admission prevents them from contesting their now established leasehold interests in the timeshares.")

## V.     Conclusion

For all of these reasons, Moses' motion for summary judgment will be denied and UPS's motion for summary judgment will be granted. Appropriate orders will follow.


January 3, 2023                                                  BY THE COURT:

                                                                 /s/Patricia L. Dodge
                                                                 PATRICIA L. DODGE
                                                                 United States Magistrate Judge